Stephen M. Doniger, Esq. (SBN 179314)
Scott A. Burroughs, Esq. (SBN 235718)
DONIGER / BURROUGHS APC
300 Corporate Pointe, Suite 355
Culver City, California 90230
Telephone: (310) 590-1820
Facsimile:  (310) 417-3538
Email:  scott@donigerlawfirm.com
Attorneys for Plaintiff

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA – ORANGE COUNTY DIVISION

| | |
|---|---|
| UNITED FABRICS INTERNATIONAL, INC.,<br><br>Plaintiff,<br><br>         vs.<br><br>C&J WEAR, INC.; et al.,<br><br>Defendants. | Case No.: 08-1085 JVS (AJWx)<br>*Honorable James V. Selna Presiding*<br><br>**NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION PURSUANT TO FED. R. CIV. P. 56; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF SHAR SIMANTOB, MICHAEL MIRANDA, SCOTT A. BURROUGHS, ESQ.**<br><br>[STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW & [PROPOSED] ORDER SUBMITTED CONCURRENTLY HEREWITH]<br><br>**Date: July 13, 2009**<br>**Time: 1:30 p.m.**<br>**Courtroom: 10C** |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR RESPECTIVE ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE THAT on July 13, 2009 at 1:30 p.m. in Courtroom 10C of the Santa Ana Courthouse, 411 West 4th Street, Santa Ana, California 92701, Plaintiff United Fabrics International, Inc. ("UNITED") will move pursuant to Federal Rule of Civil Procedure 56 for summary adjudication as to the issues of

A.R.B., Inc. ("A.R.B."), Macy's, Inc. ("Macy's"), and Lucky Kim International, Inc.'s ("Lucky Kim") (collectively "Defendants") liability for copyright infringement, and their wilfulness in committing said infringement.

UNITED can establish that it is entitled to such a determination as a matter of law on the following grounds:  (1) Plaintiff holds a valid copyright in the two-dimensional artwork – a textile design – at issue in this matter ("Subject Design"), granting it a rebuttable presumption of ownership of the Subject Design; (2) A.R.B. had access to UNITED's designs as a customer of UNITED; (3) A.R.B. or Lucky Kim slightly modified the Subject Design in an attempt to disguise the piracy and then Lucky Kim had the modified design printed overseas on fabric and provided that fabric to A.R.B., which then sewed the fabric into garments ("Infringing Garments"); (4) A.R.B. sold the Infringing Garments to its customer, Macy's, which then sold said garments to the public, (5) The design on the Infringing Garments has both fragmented literal similarity and "total concept and feel" similarity to the Subject Design, and (6) Defendants received notice that their respective use of the Subject Design was infringing, yet continued to market and sell additional Infringing Garments.

Given the above, UNITED seeks summary adjudication on one or more of the following issues: (a) Plaintiff owns a valid copyright registration for the Subject Design; (b) A.R.B. had access to UNITED's designs; (c) Lucky Kim, A.R.B. and Macy's sold product that bore a design that infringed the Subject Design; (d) Defendants received notice of their infringement of the Subject Design; (e) Defendants, or in the alternative, at least A.R.B. and Macy's, continued to sell Infringing Garments subsequent to their respective receipts of the notice of infringement; and (f) Defendants, or in the alternative, at least A.R.B. and Macy's, were willful in their infringement.

This Motion is based on the attached Memorandum of Points and Authorities, the Statement of Uncontroverted Facts, the Declarations of Michael Miranda, Shar Simantob, and Scott A. Burroughs, Esq., filed herewith, the papers and evidence on file in this case, and such evidence and argument as may be received at the hearing.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on June 19, 2009.


Dated: June 22, 2009                    DONIGER / BURROUGHS


                                        By: /S/ Scott A. Burroughs
                                        Scott A. Burroughs, Esq.
                                        Attorney for Plaintiff

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND STATEMENT OF FACTS

### A. UNITED AND ITS CREATION OF THE SUBJECT DESIGN

UNITED is a Los Angeles-based importer and distributor of solid and printed fabrics. The printed fabric sold by UNITED's bears unique and proprietary textile designs. Simantob Decl. ¶ 2. UNITED's sales are driven by its heavy investment in trendy, unique and aesthetically-pleasant graphic textile designs which are either purchased or created by its highly-skilled design team. Id. A significant amount of UNITED's business is generated from marketing designs created by this in-house design team and then securing printing orders for those proprietary designs. Id. UNITED being the exclusive source of its designs is critical to its business since it requires interested parties to print their fabric bearing Plaintiff's designs through Plaintiff. Id.

On March 20, 2006 UNITED purchased an original work of art and all rights thereto from Contramoda, an Italian Art Studio. Miranda Decl. ¶ 2; Ex. 1. UNITED's head designer, Michael Miranda, took portions of this original artwork, reformatted it, and balanced the design elements to create something he felt would look compelling when printed on clothing ("Subject Design"). Id.; Ex. 2. The design was then registered with the United States Copyright Office on August 23, 2006, whereby it was assigned U.S. Copyright No. VAu 714-548. Simantob Decl. ¶ 3; Ex. 3.

UNITED owns all rights in and to the Subject Design, and published said design by sampling and making sales of fabric bearing said design prior to the acts alleged herein. Simantob Decl. ¶ 4. Plaintiff has not granted any other party a license to print or otherwise reproduce the Subject Design. Id. Indeed, the exclusivity of the Subject Design to Plaintiff is critical to its business since it can thus require interested

parties to print those designs through Plaintiff. Id. Plaintiff makes clear to its customers that its designs are copyrighted and proprietary. Id.

B. THE SAMPLING PROCESS AND DEFENDANTS' ACCESS

To obtain orders for its printed textiles, Plaintiff provides or sells fabric samples bearing its designs to potential customers. Simantob Decl. ¶ 5. Each sample is clearly marked with a copyright notice, and language indicating that the design is proprietary to UNITED. Id. In addition, the documents that evidence the transactions for UNITED samples bear notice that the designs are copyrighted. Id. The potential customers are generally garment manufacturers who show UNITED's fabric samples to their retail store customers in an attempt to generate orders for garments printed with the design. Id. If the retail customer likes the design, it will write an order to the garment manufacturer for garments printed with the design. Id. At this point, the garment manufacturer, which has notice that the design is proprietary to UNITED, has a contractual obligation to return to UNITED and purchase the fabric to fulfill the order.  Unfortunately, the garment manufacture will choose to bypass the owner of the design and print it at a much cheaper price through a third party, which in this case the evidence reveals to be Defendant Lucky Kim. Id.

A.R.B is a customer of United. Simantob Decl. ¶ 6; Ex. 12. Prior to A.R.B.'s purchase and sale of the Infringing Garments, it reviewed Plaintiff's textile design line and purchased fabric printed with UNITED's textile designs. Id. At the time A.R.B. was a customer of UNITED, the Subject Design was included in UNITED's line of textile designs. Id. As such, A.R.B. would have had a reasonable opportunity to view or copy the Subject Design. Id.

C. THE PRODUCTION AND SALE OF THE INFRINGING GARMENTS

The provision of the design on Infringing Garments occurred in one of two ways. Either A.R.B. provided the Subject Design to Lucky Kim and requested that the design be printed on fabric, or Lucky Kim provided the Subject Design to A.R.B.

and indicated that Lucky Kim was authorized print the design for A.R.B. Under either scenario, neither party obtained authorization from UNITED, or otherwise had the right, to use said design.

Lucky Kim had the Subject Design knock-off printed on fabric in Korea, then imported the fabric and sold and delivered it to it to A.R.B. Burroughs Decl. ¶5; Ex. 4. A.R.B. then converted the Lucky Kim fabric into garments, and sold them to Macy's. Burroughs Decl. ¶3; Ex. 6.

On July 5, 2007, UNITED's investigation revealed that Macy's retail stores were selling garments that bore a design with an uncanny resemblance to the Subject Design. Simantob Decl. ¶ 7; Ex. 5. The UNITED investigator purchased an exemplar of said garment. Id. A comparison of the design on this garment with the Subject Design reveals the garment's textile design to be a clear knock-off. q.v., Ex. 2 with Exs. 5 and 9; see also Ex. 11.

The clumsy modifications to the design, and the quality of the printing and fabric, alerted UNITED to the fact that this was not legitimate UNITED fabric, but a knock-off. The layout, posture and scale of this design were remarkably similar to that in the Subject Design, and certain elements of the intricate geometric floral designs were identical, such that independent creation of this design was not a reasonable possibility. Further investigation into the manufacturer ID number affixed by law to the Infringing Garments revealed that the garments had been manufactured and sold to Macy's by A.R.B. and Macy's later confirmed that A.R.B. was the source for the Infringing Garments. Burroughs Decl. ¶ 3; Ex. 6. This production and sale violated UNITED's copyright in the Subject Design and in August of 2007. Plaintiff's counsel sent a cease and desist demand to both A.R.B. and Macy's requiring said parties to cease their sales of the Infringing Garments. Burroughs Decl. ¶4; Ex.7. Counsel to Lucky Kim was forwarded these cease and desist demands and

provided a response indicating there would not be compliance with the demand. Burroughs Decl., ¶7; Ex. 8.

A.R.B. and Macy's failed to adequately respond to the cease and desist, and this action was filed on February 15, 2008. Thereafter, on October 24, 2008, more than eight (8) months after the initiation of this action, UNITED's investigator found an *additional* garment bearing a knock-off of the Subject Design being offered for sale at Macy's[1]. Simantob Decl. ¶ 8; Ex. 9. Again, these garments bore A.R.B.'s tags indicating they were provided by A.R.B.  Id. The new garments were a different style and cut than the first round of Infringing Garments, and were comprised of a different type of fabric, but bore a knock-off of the Subject Design, indicating that these garments were part of a discrete follow-up order placed by Macy's and filled by A.R.B. Given the date of purchase, this order could only have taken place *subsequent* to Macy's and A.R.B. receiving notice of the infringement. Clearly, A.R.B. and Macy's paid no heed to UNITED's request that they cease their exploitation of UNITED's copyrighted design, and continued to profit from sales of products bearing the knock-off design.

In light of the facts set forth above, it is clear that no triable issue of fact exists as to Defendants liability for copyright infringement, and willfulness. As such, this Motion must be granted.

## II. LEGAL BRIEF

### A. THE SUMMARY JUDGMENT STANDARD

Under Fed.R.Civ.P. 56(c), summary judgment must be granted if the evidence, when viewed in the light most favorable to the non-moving party, shows that there is

---

[1] Following this discovery, Plaintiff sent an additional cease and desist demand to A.R.B. in connection with its sales of the second garment to provide notice that those garments too were infringing. Burroughs Decl., ¶6, Ex. 10.

no genuine issue as to any material fact. Fed. R. Civ. P. 56(c); <u>Tarin v. County of Los Angeles</u>, 123 F. 3d 1259, 1263 (9th Cir. 1997). The moving party must shift the burden by presenting evidence to establish the absence of any issues of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 106 S. Ct. 2505, 91 L. Ed. 2d 265 (1986). Plaintiff meets this burden by showing that there is no probative evidence of a dispute as to any material fact. <u>Id</u>. Upon this showing, the Defendants must provide specific facts that indicate a dispute as to a material issue. This showing must be substantive, a "scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of, material fact." <u>Addisu v. Fred Meyer, Inc</u>. 198 F. 3d 1130, 1134 (9th Cir. 2000).

No genuine issue of material fact exists in regard to the issues sought to be foreclosed and summary adjudication is appropriate.

B. <u>DEFENDANTS ARE LIABLE FOR WILLFUL COPYRIGHT INFRINGEMENT BECAUSE PLAINTIFF HAS ESTABLISHED OWNERSHIP OF THE SUBJECT DESIGN, ACCESS, SUBSTANTIAL SIMILARITY AND DEFENDANTS' WILLFULNESS</u>

The evidence on record clearly establishes infringement by Defendants. To succeed on its copyright infringement claim, Plaintiff must establish "(1) ownership of the copyright; and (2) infringement -- that the defendant copied protected elements of the plaintiff's work." <u>Three Boys Music Corp. v. Bolton</u>, 212 F.3d 477, 481 (9th Cir. 2000), <u>cert. denied</u>, 531 U.S. 1126 (2000). UNITED satisfies both prongs.

1. <u>Plaintiff's Copyright Registration, Source Art and Artist Declarations Establish Its Ownership of the Subject Design.</u>

Plaintiff can establish ownership of the copyright because it owns a copyright registration for the Subject Design. Under 17 U.S.C. § 410(c), the registration certificate constitutes *prima facie* evidence of the validity of the copyright and the facts stated on the certificate, including Plaintiff's ownership. <u>Lamps Plus, Inc. v. Seattle Lighting Fixture Co.</u>, 345 F.3d 1140, 1144–45 (9th Cir. 2003). This

presumption is buttressed by the documents evidencing the origins and purchase of the source artwork, and the Declaration Miranda, the designer who selected and purchased the source artwork, and developed it into the Subject Design.  The Declarations attest to the creation and originality of the work, and its ownership by Plaintiff, i.e., "that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity."  Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068, 1076 (9th Cir. 2000)(quoting Feist Pub., Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 345 (1991)).

This presumption is also edified by the complex and unique nature of artwork. If a minimal degree of expression is encompassed in the work, it may be subject to protection.  Feist, 499 U.S at 345.  A simple review of the Subject Design, which is attached as Exhibit 2, indicates that it is ornate, creative, and meets the threshold of protectable expression.  UNITED has established its ownership of a copyright registration for a protectable work of art.

     2.  <u>Defendant Infringed Plaintiff's Subject Design by Accessing Said Design and Creating Illegal Reproductions Thereof.</u>

UNITED has also shown that Defendants Lucky Kim and A.R.B. copied the Subject Design, and that Macy's sold garments bearing these illegal copies. It has done so by establishing that A.R.B. had access to the Subject Design, which was published prior to the infringement, and that the design on the Infringing Garments is so substantially similar to the Subject Design that it is impossible that the design on the Infringing Garments was independently created. After this showing, the burden shifts to the infringing party to show that the design at issue was independently created. <u>Three Boys Music Corp.</u>, 212 F.3d 486. No credible evidence of independent creation has been adduced by Defendants in this respect, and none can be, because the Defendants' design is a knock-off of the Subject Design. As set forth below, all evidence supports the granting of this Motion.

### a.     Defendant's Access to the Subject Design

Plaintiff has established that Defendants accessed the Subject Design. To do so, UNITED has provided evidence that one of the Defendants had an "opportunity to view or copy" the Subject Design.  Three Boys Music Corp., 212 F.3d at 483. Because an infringed party infrequently catches the infringer in the act, "[p]roof of access requires only an opportunity to view or to copy plaintiff's work." Kamar International v. Russ Berrie & Co., 657 F.2d 1059, 1062 (9th Cir. 1981).

In this case, A.R.B. was a former customer of UNITED, and reviewed and had access to UNITED's textile designs prior to the infringement at issue. As such, it clearly had the "opportunity to view or copy" the Subject Design.

Even if A.R.B.'s direct access to the Subject Design has not been conclusively established by virtue of it being a UNITED customer at the time the Subject Design was part of UNITED's line, summary adjudication of the infringement issue would still be proper given the near-verbatim nature of the infringement. If two designs are "so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access." Lipton v. Nature Co., 71 F.3d 464, 471 (2d Cir.1995). In this case, a comparison of Exhibit 2 with Exhibits 5 and 9 bear out the striking similarity between the designs at issue. The designs are very ornate, and the marked similarities between the two can only lead to the conclusion that the Defendants' design was copied from the Subject Design. As such, this Motion must be granted.

### b.     Substantial Similarity Exists

Plaintiff can also establish that no reasonable dispute exists as to the substantial similarity of the two designs. In comparing textile designs for substantial similarity, if an "average lay observer would recognize the alleged copy as being appropriated from the copyrighted work," then the requisite similarity exists to establish infringement. Novelty Textile Mills v. Joan Fabrics Corp., 558 F.2d 1090, 1093 n.4 (2d Cir. 1977). Not only is the total look and feel of the designs the same, but certain

elements of the respective designs are identical. This is readily apparent from a review of Exhibit 11, a close-up comparison of the design elements. Such a review reveals there is no doubt that the design on the Infringing Garments exploits the Subject Design in a material way. Allen v. Academic Games League of America, Inc., 89 F.3d 614, 617 (9th Cir.1996).  It is simply the same artwork, though the design on the Infringing Garments is slightly modified in an attempt to disguise the piracy. There is little doubt that the designs at issue are far too complex, with similarities far too material, for such similarity to be coincidental.

                i.    *Inverse Ratio Rule*

        Defendants' superficial modifications of the Subject Design fail to obfuscate the piracy. Even if the designs were not obviously similar, infringement would still lie because Defendants had access to the Subject Design through A.R.B., triggering application of the inverse ration rule. Shaw v. Lindheim, 919 F.2d at 1356 (9th Cir. 1990) (the defendants' admission of access was sufficient to apply the inverse ratio rule, as well as a factor to be considered in favor of the plaintiff); See also Metcalf v. Bochco, 294 F. 3d 1069, 1075 (9th Cir. 2002). The Ninth Circuit recognizes that issues of access and substantial similarity are "inextricably linked" and imposes a *lower* standard of proof of substantial similarity where a *high degree of access* has been shown. Id.  Thus, where there is a strong showing of access, the required degree of similarity "may be somewhat less" than would be necessary in the absence of such proof. See Shaw v. Lindheim, 919 F.2d 1353, 1361 (9th Cir. 1990); Three Boys Music Corp. v. Bolton, 212 F.3d 477, 485 (9th Cir. 2000) ("[We] require a lower standard of proof of substantial similarity when a high degree of access is shown."). Given A.R.B.'s business relationship with UNITED, and its opportunity to view and copy the Subject Design, this doctrine should apply. This dispensation, though unnecessary given the designs' overwhelmingly similarity, further militates in favor of granting this Motion.

ii.     *Two-Step Analysis*

The designs are so similar that no material issues exist in regard to Plaintiff satisfying the standard for substantial similarity under the multi-step analysis used in this Circuit. Cavalier v. Random House, 297 F.3d 815,824 (9th Cir. 2002). The two-part test examines the works at issue on both an extrinsic and intrinsic level to ascertain whether an infringement has occurred. Three Boys Music Corp., 212 F.3d at 485; See also Smith v. Jackson, 84 F.3d 1213, 1218 (9th Cir. 1996).

Initially, Plaintiff satisfies the extrinsic test, which analyzes whether the works at issue similarly express the ideas encompassed in the works when examined on an objective, external level. Three Boys Music Corp., 212 F.3d at 485. The moving party satisfies this test when it can identify protectable elements of the two works which are similar. Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1443 (9th Cir. 1994). On a motion for summary judgment, the court settles the extrinsic test. Jackson, at 1218. A comparison of the two designs, and the side-by-side analysis set forth in Exhibit 9, provides objective, and irrefutable, evidence that the Subject Design was copied by Defendants for use on the Infringing Garments. Both possess the same total look and feel, and certain creative elements are strikingly similar in each. The slight, superficial differences between the two do not refute allegations of copying; instead, they evidence Defendants' *knowledge* that the Subject Design was copyrighted, and reveal Defendants' intent to disguise the piracy.

In regard to the remarkable similarities between the designs, if there is "slavish copying" of the infringed work, a substantial similarity analysis is unnecessary. Novelty Textile Mills, 558 F.2d 1093 n.4. See also Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960). ("No greater similarity is possible than defendants' "photographic reproduction" of Plaintiff's floral design"). Clearly, the substantial nature of the similarity between the Subject Design and the design on the Infringing Garments satisfies the test for adjudicatory similarity.

Plaintiff also satisfies the intrinsic test, which asks whether the "ordinary, reasonable person would find the total concept and feel of the works to be substantially similar." Three Boys Music, 212 F.3d at 485. An infringement has occurred if a defendant has captured the "total concept and feel" of the plaintiff's work. Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp., 562 F.2d 1157, 1166 (9th Cir. 1977). The "total concept and feel" analysis compares the similarity of the particular expression used, and does not require a point by point dissection. Id., at 1164. In doing its analysis, the Court analyzes the work "as a whole." Apple Computer, 35 F.3d at 1443.

In comparing the two works at issue here, it is clear that the design on the Infringing Garments has misappropriated the "total concept and feel" of the Subject Design, and that the designs are substantially similar when taken "as a whole." Given the virtually infinite options available for drawing, grouping, scaling and arranging two-dimensional design elements, the substantial similarity between the two designs' elements, and the likewise similar scope, scale and layout of the elements, the only conclusion a trier of fact could reach is that the Infringing Garments bear a knock-off of the Subject Design.

Defendants' liability for infringement is further cemented by the nature of the infringing products, and the level of scrutiny used by consumers in purchasing same. Where the designs at issue are intended for garments, small differences between the two are far less important. See Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc., 490 F.2d 1092, 1094 (2d Cir. N.Y. 1974). This is because "although small differences between the designs might be found to exist under courtroom scrutiny, those differences fade away within a few feet or absent sharp scrutiny." Id.; see also Just in Materials Designs, Ltd. v. Arise Textile, Inc., 1980 U.S. Dist. LEXIS 10822, 4-5 (S.D.N.Y. Mar. 13, 1980) (finding that differences identified by defendant between prints used on women's dresses were not likely to attract attention from the average person when examined from four feet away and seen on a female body). As

in <u>Arise Textile</u>, this case deals with women's garments, and the designs would not appear at all dissimilar to a reasonable observer. The modifications that Defendants made to the Subject Design, superficial and insubstantial to begin with, are clearly irrelevant given the nature of the product.

Finally, while the intrinsic test is somewhat subjective, the Court must grant summary judgment if the moving party has met its burden in establishing evidence of copying to such a degree "that the possibility of independent creation is precluded[.]" <u>Twentieth Century-Fox Film Corp. v. MCA, Inc</u>., 715 F.2d 1327, 1330 (9th Cir. 1983). In such a case, "it is not necessary for a jury to decide the questions raised by the intrinsic test." <u>Id</u>. Plaintiff has made such a showing.

### 3. A Finding of Willful Infringement is Appropriate.

There is no question that Defendants had notice of their infringing conduct, and continued to infringe in spite of that notice. Copyright infringement is "willful" if it is shown that one has committed the infringement "with knowledge that [one's] conduct constitutes copyright infringement." <u>Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.</u>, 106 F.3d 284,293 (9th Cir. 1997), rev'd on other grounds. Willful infringement also exists when "the defendant recklessly disregarded the possibility that its conduct represented infringement." Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 112 (2d Cir. 2001) (internal quotations and citation omitted). Under either of these rubrics, it is beyond dispute that Defendants were willful in committing the infringement.

### 4. Defendants' Knowledge of the Copyrighted Nature of the Subject Design and Modifications Thereto Establishes Willfulness.

The slight differences between the two designs at issue indicate that Defendants knew the Subject Design was copyrighted material, and militates in favor of finding willful infringement. Slight modifications made to obfuscate piracy do not allow an infringer to escape liability for the infringement. <u>Runge v. Lee</u>, 441 F.2d

579, 582 (9th Cir. 1971). As Judge Learned Hand once noted, "[Copyright infringement] cannot be limited literally to the text, else a plagiarist would escape by immaterial variations." Nichols v. Universal Pictures Corp., 45 F.2d 119, 121 (2nd Cir. 1930). Moreover, the Ninth Circuit specifically adopted this view, holding:

> "[An] infringement is not confined to literal and exact repetition or reproduction; it includes also the various modes in which the matter of any work may be adopted, imitated, transferred, or reproduced, with more or less colorable alterations to disguise the piracy."

Universal Pictures Co., Inc. v. Harold Lloyd Corp., 162 F.2d 354, 360 (9th Cir. 1947).

In fact, the very existence of such slight differences is clear evidence of the willful nature of the copying. Concord Fabrics, Inc. v. Marcus Bros. Textile Corp., 409 F.2d 1315 (2d Cir. 1969) ("While the trial court placed great emphasis on the minor differences between the two design patterns, we feel that the very nature of these differences only tends to **emphasize the extent to which the defendant has deliberately copied** from the plaintiff.")(emphasis added); Atari, Inc. v. North American Philips Consumer Electronics Corp., 672 F.2d 607, 619 (7th Cir. 1982) (defendant's "superficial changes . . . may be viewed as an attempt to disguise an intentional appropriation of [Plaintiff's] expression."), *superseded on other grounds*.

Defendants' attempts to hide its piratical behavior do not allow it to escape liability for infringement. The "very nature" of the modifications, which were superficial and non-substantive, emphasize the deliberate manner in which Defendants committed the copyright infringement.

While the nature of the changes clearly evidences willfulness, they are also too minor for Defendants to evade liability for its infringement. Only in those cases where the original design is "deleted or so disguised as to be unrecognizable," is infringement avoided. See v. Durang, 711 F.2d 141 (9th Cir. 1983). In other words, "the points of dissimilarity [must] not only exceed the points of similarity, but

indicate that the remaining points of similarity are, within the context of plaintiff's work, of minimal importance, either quantitatively or qualitatively . . ." 4-13 Nimmer on Copyright § 13.03. A review of the comparison of the designs at issue makes clear that such a situation does not exist in this case.

Instead, the alterations, which are too minor to attribute to aesthetic or production reasons, indicate that Defendants acted with knowledge of UNITED's enforceable rights in the work. As such, they cannot escape liability for its infringement by pointing out these minor differences because "... no plagiarist can excuse the wrong by showing how much of his work he did not pirate"; instead, "it is enough that substantial parts were lifted. <u>Sheldon v. Metro-Goldwyn Pictures Corp</u>., 81 F.2d 49, 56 (2nd Cir. 1936). In this case, it is clear that Defendants lifted the "total look and feel" of Plaintiff's copyrighted work. This is knowing, willful copyright infringement.

5. <u>Defendants Continued to Infringe after Receipt of Cease and Desist</u>

A.R.B. and Macy's received notice of Plaintiff's claims of infringement on in <u>August of 2007</u>. Ex. 7. These cease and desist demand were forwarded to counsel for Lucky Kim, who contacted our office to confirm receipt. Ex. 8. This case was filed in February of 2008, and served on Lucky Kim, A.R.B. and Macy's. Despite this notice, eight (8) months after the filing of this complaint, and *over a year* after receiving the cease and desist demands, A.R.B. sold an additional order of garments bearing the Subject Design to Macy's, and Macy's sold these additional garments to the public. Ex. 9. Plaintiff's counsel was then forced to sent a *second* cease and desist to A.R.B. in regard to this second order demanding that they stop creating, purchasing and selling products bearing its knock-off of the Subject Design. Burroughs Decl.¶ 6; Ex. 10.

As indicated above, despite the cease and desist demand, and despite the filing of this case, Defendants continued to sell the goods at issue until *at least* October 24,

2008 – more than a year after receiving notice of the infringement. Continuing the sales of garments after receipt of notice of infringement constitutes willful infringement. <u>Dolman v. Agee</u> 157 F.3d 708, 711, 715 (9th Cir. 1998).  In <u>Dolman</u>, the defendant's attorney indicated that the Defendant's rights as to the works at issue were "a mess" in light of the notice of infringement it received. Despite this notice, and the "mess," the defendant continued to sell the infringing product. The Court found Defendant's conduct to be willful infringement.

As in <u>Dolman</u>, Defendants received a cease and desist demand – A.R.B. and Macy's directly, and Lucky Kim through a conveyance of the demands to its counsel – that included compelling evidence of the infringement. They were also served with the complaint – which clearly indicated that the goods were alleged to be infringing – yet continued to purchase and sell goods bearing the knock-off of the Subject Design. It is clear that A.R.B. and Macy's ignored the cease and desist letter and the claims in the complaint and entered into an agreement to purchase and sell the second round of infringing garments. It is also likely that the fabric used for this second round of garments came from Lucky Kim, in which case there would be additional evidence of its willfulness. At the very least, a finding of willfulness should be entered as to A.R.B. and Macy's in connection with their clear refusal to cease and desist in their copyright infringement, as evidenced by the second round of sales of the infringing garments.

Given the refusal to cease and desist, at the very least, A.R.B. and Macy's are liable for willful infringement, and the attendant elevated damages, because "reckless disregard of the copyright holder's rights . . . suffices to warrant award of the enhanced damages." <u>Knitwaves, Inc. v. Lollytogs Ltd.</u>, 71 F.3d 996, 1010 (2d Cir. 1995). Clearly, A.R.B. and Macy's were on notice that the Infringing Garments violated UNITED's copyright, yet they continued to purchase and sell the same.  At the absolute very lease, A.R.B. and Macy's "recklessly disregarded the possibility

that its conduct represented infringement" and must be found willful. If the fabric for these garments came from Lucky Kim, it also must be found willful.

## III. <u>CONCLUSION</u>

UNITED has discharged the burden imposed by Fed.R.Civ.P.56. It has conclusively shown that Plaintiff owns a valid registration in the Subject Design and that Defendants manufactured, distributed, purchased, and sold products which infringed the Subject Design. Despite receiving notice of this infringement, A.R.B. and Macy's continued to make sales of the infringing product. Given this showing, Plaintiff submits that summary adjudication is appropriate as requested herein, and respectfully requests that the Court **grant** this Motion and hold that Defendants are liable for copyright infringement, and that the Defendants were willful in committing the copyright infringement herein alleged.

Respectfully submitted,

DONIGER / BURROUGHS APC

DATED: June 22, 2009

By: <u>/S/ Scott A. Burroughs</u>
Scott A. Burroughs, Esq.
Attorneys for Plaintiff

## DECLARATION OF SHAR SIMANTOB

I, Shar Simantob, declare that I have personal knowledge of the following, and state that if called as a witness I could and would competently testify as follows:

1.      I am the president of UNITED, Plaintiff in this action.

2.      UNITED is a Los Angeles-based importer and distributor of solid and printed fabrics. The printed fabric sold by UNITED's bears unique and proprietary textile designs. UNITED's sales are driven by its heavy investment in trendy, unique and aesthetically-pleasant graphic textile designs which are either purchased or created by its highly-skilled design team. A significant amount of UNITED's business is generated from marketing designs created by this in-house design team and then securing printing orders for those proprietary designs. UNITED being the exclusive source of its designs is critical to its business since it requires interested parties to print their fabric bearing Plaintiff's designs through Plaintiff.

3.      The design at issue in this case was registered by UNITED with the United States Copyright Office on August 23, 2006, whereby it was assigned U.S. Copyright No. VAu 714-548 ("Subject Design"). I have attached hereto a true and correct copy of the registration certificate for the Subject Design as Exhibit 3.

4.      UNITED owns all rights in and to the Subject Design, and published said design by sampling and making sales of fabric bearing said design prior to the acts alleged herein. Plaintiff has not granted any other party a license to print or otherwise reproduce the Subject Design. Indeed, the exclusivity of the Subject Design to Plaintiff is critical to its business since it can thus require interested parties to print those designs through Plaintiff. Plaintiff makes clear to its customers that its designs are copyrighted and proprietary.

5.      To obtain orders for its printed textiles, UNITED provides or sells fabric samples bearing its designs to potential customers. Each sample is clearly marked with a copyright notice, and language indicating that the design is proprietary to

UNITED. In addition, the documents that evidence the transactions for UNITED samples bear notice that the designs are copyrighted. The potential customers are generally garment manufacturers who show UNITED's fabric samples to their retail store customers in an attempt to generate orders for garments printed with the design. If the retail customer likes the design, it will write an order to the garment manufacturer for garments printed with the design. At this point, the garment manufacturer, which has notice that the design is proprietary to UNITED, has a contractual obligation to return to UNITED and purchase the fabric to fulfill the order.  Unfortunately, the garment manufacture will choose to bypass the owner of the design and print it at a much cheaper price through a third party, which in this case the evidence shows was Defendant Lucky Kim.

6.      A.R.B is a customer of UNITED. I have attached hereto a true and correct copy of UNITED's customer summary for A.R.B. This document reflects the dates on which A.R.B. sampled or purchased product from our company, and the sales information relevant to these transactions. Prior to A.R.B.'s purchase and sale of the Infringing Garments, it reviewed Plaintiff's textile design line and purchased fabric printed with UNITED's textile designs. While A.R.B. has been a customer of UNITED, the Subject Design has been included in UNITED's line of textile designs. As such, A.R.B. would have had numerous opportunities to view or copy the Subject Design.

7.      On July 5, 2007, UNITED's investigation revealed that Macy's retail stores were selling garments that bore a design with an uncanny resemblance to the Subject Design. The UNITED investigator purchased an exemplar of said garment. A comparison of the design on this garment with the Subject Design reveals the garment's textile design to be a clear knock-off. The labels affixed to the Infringing Garments bore the manufacturer ID number of A.R.B. I have attached hereto a true

and correct image of an exemplar from the first order of Infringing Garments as Exhibit 5.

8.      UNITED's investigator found additional Infringing Garments for sale at Macy's on October 24, 2008.  These garments were a different style and cut than the first round of Infringing Garments, and were comprised of a different type of fabric, but bore the same tags that indicated A.R.B. was the vendor. I have attached hereto a true and correct image of an exemplar from the second order of Infringing Garments as Exhibit 9.

9.      The design on the Infringing Garments is substantially similar to our Subject Design. I have attached hereto as Exhibit 11 a true and correct copy of a side-by-side comparison of the designs.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed this 22nd day of June, 2009, at Los Angeles, California.


By:  _____
     SHAR SIMANTOB
     Declarant

## **DECLARATION OF MICHAEL MIRANDA**

I, MICHAEL MIRANDA, declare that I have personal knowledge of the following, and state that if called as a witness I could and would competently testify as follows:

1.    I am an employee of UNITED, am employed as part of its design team, and was so employed at the time the Subject Design was created.

2.    On March 20, 2006 UNITED purchased an original work of art and all rights thereto from Contramoda, an Italian Art Studio. I, as head designer for UNITED, took portions of this original artwork, reformatted it, and balanced the design elements to create something I felt would look compelling when printed on clothing. I have attached hereto a true and correct copy of the Assignment of Rights as Exhibit 1.

3.    Using certain design elements from the above-mentioned source artwork, and my own original creative talent and inspiration, I created the Subject Design. I have attached hereto  a true and correct copy of the Subject Design as Exhibit 2.

4.    UNITED owns all rights in and to the Subject Design.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed this 22nd day of June, 2009, at Los Angeles, California.


By:    _____
       MICHAEL MIRANDA
       Declarant

## <u>DECLARATION OF SCOTT A. BURROUGHS, ESQ.</u>

I, Scott A. Burroughs, Esq., declare that I have personal knowledge of the following, and state that if called as a witness I could and would competently testify as follows:

1.     I am a shareholder in DONIGER / BURROUGHS, APC, attorneys for Plaintiff in this action.

2.     Our office has propounded discovery on the Defendants in this action.

3.     I have attached hereto as Exhibit 6 a true and correct copy of Macy's Response to Interrogatory No. 7, in which it states that the Infringing Garments were supplied by A.R.B.

4.     In August of 2007 our office served cease and desist demands regarding the garments and design at issue in this case upon A.R.B. and Macy's. I have attached true and correct copies of these letters and the certified receipts, as Exhibit 7. Despite this demand, A.R.B. and Macy's continued to purchase and sell garments bearing the design at issue.

5.     I have attached as Exhibit 4 a true and correct copy of invoices produced during discovery in this case that reflect Lucky Kim's first round of sales to A.R.B. of the fabric used to create the Infringing Garments.

6.     In 2008, our office served a second cease and desist demands upon A.R.B. regarding the second round of Infringing Garments produced by A.R.B. and sold at Macy's. I have attached hereto a true and correct copy of this letter as Exhibit 10.

7.     I have attached as Exhibit 8 a true and correct copy of a letter sent by counsel to Lucky Kim in response to our August 2007 cease and desist demands.

///

///

8.    In advance of filing this Motion, the parties conducted the conference of counsel pursuant to Local Rule 7-3 on June 19, 2009.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed this June 22, 2009 at Los Angeles, California.


By:    /S/ Scott A. Burroughs
       SCOTT A. BURROUGHS, ESQ.
       Declarant

MOTION FOR SUMMARY ADJUDICATION